Sherron COOK, Individually and as Duly Appointed Guardian of Robert Cook, NCM, and as Next Friend of Nora Cook, a Minor, Hoyt Cook and Luther Cook, Appellant,

v.

NACOGDOCHES ANESTHESIA GROUP, L.L.P., Appellees.

No. 12–04–00027–CV.

Court of Appeals of Texas, Tyler.

May 31, 2005.

Mac Gann, for appellant.

James Zeleskey, Robert T. Cain Jr., Zeleskey, Cornellius, Hallmark, Roper & Hicks, L.L.P., Lufkin, Lufkin, for appellees.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## OPINION

DIANE DEVASTO, Justice.

Sherron Cook ("Sherron") appeals the trial court's order granting summary judgment in favor of Nacogdoches Anesthesia Group ("the Group") and Dr. John Haidinyak. She raises three issues on appeal. We affirm in part and reverse and render in part.

### BACKGROUND

The Group is a limited liability partnership that contracted with Nacogdoches Medical Center Hospital to be the exclusive provider of anesthesia services at the hospital. Peter Baublet, a certified registered nurse anesthetist, worked for the Group. Baublet provided anesthesia services to Robert Cook ("Robert") on February 25, 2002.

At the time, Robert was forty-eight years old suffering from severe obstructive sleep apnea. He weighed 270 pounds. Dr. Gregory S. Tate suggested two surgical procedures for Robert, a laser-assisted uvuloplasty and a genio tubercle advancement. Prior to the scheduled procedures, Baublet consulted with Nancy Batzloff regarding Dr. Tate's requested anesthesia care for Robert. Batzloff was a partner in the Group and also a nurse anesthetist. Baublet told Batzloff that because the intubation would be difficult, he had requested that a tracheostomy tray be available in case problems arose. Batzloff told Baublet that she would be next door and that if he needed anything, he should "just holler."

After Dr. Tate finished the uvuloplasty, Baublet was unable to adequately oxygenate Robert. A "code blue" was called, and Dr. John Haidinyak, another partner in the Group, responded. Haidinyak noticed pink, frothy fluid coming through the endotracheal tube and said, "The case is cancelled." Immediately following his answer, in response to a request for clarification, Haidinyak said, "I think it was obvious the case was cancelled." Robert suffered respiratory arrest and cardiac arrest, which led to severe irreversible brain damage.

On November 5, 2003, Appellees filed a traditional and a no-evidence motion for summary judgment contending that a fact issue exists concerning whether Baublet was an employee of the Group or an independent contractor. Appellees assert that Baublet was an independent contractor and, thus, neither the Group nor Haidinyak may be held vicariously liable for any of Baublet's allegedly negligent acts or omissions. Additionally, Appellees contend that there is no evidence that Haidinyak individually had a duty to Robert, that he breached any applicable standard of care, or that any alleged breach of care by Haidinyak is causally connected to Robert's injuries. On December 9, 2003, Sherron filed a motion to nonsuit Haidinyak. After a hearing on Appellees' joint motion for summary judgment, the trial court

signed an order granting the motion on December 15, 2003. This appeal followed.

## SUMMARY JUDGMENT

Sherron asserts in her first and second issues that the trial court erred in granting summary judgment for the Group. Specifically, she claims that the trial court erred in finding that Baublet was an independent contractor and that there was no evidence that Baublet was an employee or agent of the Group.[1]

### *Standard of Review*

Texas uses summary judgments merely "to eliminate patently unmeritorious claims and untenable defenses." *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989). In reviewing a traditional motion for summary judgment, this court must apply the standards established in *Nixon v. Mr. Property Management Company*, 690 S.W.2d 546, 548–49 (Tex.1985), which are as follows:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed material fact issue precluding summary judgment; and

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*See id.*

A defendant who negates at least one essential element of a cause of action or proves all essential elements of an affirmative defense is entitled to summary judgment as to that cause of action. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). Because the burden of proof is on the movant, and all doubts about the existence of a genuine issue of a material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

In a no-evidence summary judgment, a party is entitled to summary judgment if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). We view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003), *cert. denied*, 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004). In reviewing a no-evidence summary judgment, we apply the same legal sufficiency standard we apply in reviewing a directed verdict. *Id.* at 750–51. A no-evidence summary judgment is improperly granted if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* at 751. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* If the movant's motion and summary judgment proof facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a material fact issue sufficient to defeat summary judgment. *Dolcefino v. Randolph*, 19 S.W.3d 906, 917 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). If the issue raised is based upon undisputed

1. In a separate issue and on different grounds, Sherron contends the trial court erred in granting summary judgment for Haidinyak.

and unambiguous facts, then the reviewing court may determine the question presented as a matter of law. *Gramercy Ins. Co. v. MRD Invs., Inc.*, 47 S.W.3d 721, 724 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). However, if resolution of the issues rests on disputed facts, summary judgment is inappropriate, and the reviewing court should reverse and remand for further proceedings. *Id.*

Where, as here, the order granting summary judgment does not specify the particular grounds on which the trial court granted the motion, on appeal, the summary judgment opponent must defeat each summary judgment ground argued by the movant. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). Otherwise, an appellate court must uphold the summary judgment on any ground that is supported by the evidence and pleadings. *Id.* Because the propriety of summary judgment is a question of law, we review the trial court's summary judgment de novo. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994).

**Employee or Independent Contractor**

The test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work. *Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex.1990); *Farrell v. Greater Houston Transp. Co.*, 908 S.W.2d 1, 3 (Tex.App.-Houston [1st Dist.] 1995, writ denied). An employer controls not merely the end sought to be accomplished, but also the means and details of its accomplishment. *Thompson*, 789 S.W.2d at 278; *Darensburg v. Tobey*, 887 S.W.2d 84, 88 (Tex.App.-Dallas 1994, writ denied). Unless the evidence is conclusive and reasonably susceptible to only one inference, this question is one of fact. *Pitch-*

*fork Land & Cattle Co. v. King*, 162 Tex. 331, 346 S.W.2d 598, 603 (1961). We measure the right to control by considering (1) the independent nature of the worker's business, (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job, (3) the worker's right to control the progress of the work except as to final results, (4) the time for which the worker is employed, and (5) the method of payment. *Id.* (citing *Indus. Indem. Exch. v. Southard*, 138 Tex. 531, 160 S.W.2d 905, 907 (Tex.1942); *Farrell*, 908 S.W.2d at 3).

The Group's summary judgment evidence showed that at the time of Robert's surgery, Baublet worked for the Group each Monday and Friday for eight hours each day. He was free to work for anyone else the rest of the week. Additionally, the hospital, not the Group, provided the necessary equipment required for his work. Baublet also had broad discretion in how to do his job. He was free to use a variety of methods based on the type of procedure being performed, the particular patient's health, and input from the surgeon. The Group merely told Baublet when to be at the hospital to be available for anesthesia services. Moreover, the Group reported Baublet's income on a 1099 form, not a W–2 form. The Group did not pay Baublet for vacation, sick leave, or holidays, nor did the Group pay Baublet's social security or federal income taxes. This evidence shows that Baublet was an independent contractor. *See Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312–13 (Tex.2002). Sherron did not produce any contradictory evidence.

On appeal, Sherron asserts that since the Group had the exclusive contract with the hospital to provide anesthesia services, Baublet would not be allowed to work at the hospital unless it was through

the Group. We agree. She then maintains that because Baublet was allowed to work at the hospital only through the Group, Baublet must be an employee of the Group. That conclusion does not necessarily follow. Moreover, she provided no summary judgment evidence or legal authority to support her assertion. Additionally, Sherron asserts that the Group directed the details of Baublet's work, pointing out that Haidinyak, not Baublet, commented that the "case is cancelled" upon seeing Robert's condition. At most, the statement is ambiguous and is insufficient to create a fact issue. Finally, Sherron asserts that Baublet was a Group employee because he consulted with Batzloff prior to the procedure. However, the legal test for determining independent-contractor status in Texas is right to control, not the right to consult. *See Thompson,* 789 S.W.2d at 278.

The Group's summary-judgment evidence established, as a matter of law, that the Group merely controlled the end sought to be accomplished—anesthesia services available for surgeries at the hospital—whereas Baublet controlled the means and details of accomplishing the work. *See McNamara,* 71 S.W.3d at 313; *Thompson,* 789 S.W.2d at 278. Consequently, the burden shifted to Sherron to raise a material fact issue. However, she failed to do so. Thus, the trial court could have granted the summary judgment on the ground that Baublet was an independent contractor and not a Group employee. Because the trial court did not specify the particular grounds for its order granting summary judgment, we need not address Sherron's other arguments challenging the summary judgment. *See Carr,* 776 S.W.2d at 569. We overrule Sherron's first and second issues.

### Nonsuit of Dr. John Haidinyak

■ Sherron argues in her third issue that the trial court erred in granting summary judgment in favor of Haidinyak because she filed a motion to nonsuit Haidinyak before the granting of the summary judgment. We agree.

■ To take a nonsuit, the party can file either a written motion to dismiss or make an oral announcement of the nonsuit in open court. *Greenberg v. Brookshire,* 640 S.W.2d 870, 872 (Tex.1982). The movant may choose to take a nonsuit as to some parties and claims without nonsuiting the rest of the parties and claims. *See* Tex.R. Civ. P. 162, 163; *see Mainland Sav. Ass'n v. Wilson,* 545 S.W.2d 491, 493 (Tex.App.-Houston [1st Dist.] 1976, no writ). A plaintiff may take a nonsuit at anytime before the trial court grants a summary judgment. *Leon Springs Gas Co. v. Rest. Equip. Leasing Co.,* 961 S.W.2d 574, 577 (Tex.App.-San Antonio 1997, no pet.); *Taliaferro v. Smith,* 804 S.W.2d 548, 550 (Tex.App.-Houston [14th Dist.] 1991, no writ). The party requesting a nonsuit has an absolute right to a nonsuit at the moment the motion is filed with the clerk, so long as the motion is timely filed. *See Hooks v. Fourth Court of Appeals,* 808 S.W.2d 56, 59 (Tex.1991); *BHP Petroleum Co. v. Millard,* 800 S.W.2d 838, 840 (Tex.1990). A plaintiff's right to a nonsuit exists from the time the plaintiff files a motion for nonsuit or asks for one in open court. *Greenberg,* 640 S.W.2d at 872. The granting of a nonsuit is merely a ministerial act. *Id.* The plaintiff's right to take a nonsuit is unqualified and absolute as long as the defendant has not made a claim for affirmative relief. *Millard,* 800 S.W.2d at 840.

The record shows that Sherron filed a motion to nonsuit Haidinyak on December 9, 2003. The trial court conducted a hearing on Appellees' motion for summary judgment on December 11, 2003. On De-

cember 15, 2003, the trial court signed an order granting summary judgment in favor of both the Group and Haidinyak. Sherron's nonsuit was effective at the time the trial court granted summary judgment. Therefore, the trial court should not have granted summary judgment in favor of Haidinyak. Accordingly, we sustain Sherron's third issue.

### CONCLUSION

Having overruled Sherron's first and second issues, we *affirm* the trial court's summary judgment in favor of the Group. We have sustained Sherron's third issue. Accordingly, we *reverse* the summary judgment in favor of Haidinyak and *render* judgment dismissing Sherron's claims against Haidinyak without prejudice.